**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

ASSOCIATION INSURANCE COMPANY,

    Plaintiff,

v.

MOUNTAINVIEW CONSTRUCTION SERVICES, LLC,
GERALD C. CAVES, CARBONDALE GLEN LOT E-8,
LLC, CARBONDALE GLEN LOT E-15, LLC,
CARBONDALE GLEN LOT D-22, LLC, WOODBRIDGE
MORTGAGE INVESTMENT FUND 1, LLC, and
3X A CHARM, LLC,

    Defendants.

_____

**COMPLAINT FOR DECLARATORY RELIEF**
_____

Association Insurance Company. ("Association"), by and through undersigned counsel, states and alleges for its Complaint for Declaratory Relief ("Complaint") against Defendants Mountainview Construction Services, LLC ("MCS") and Gerald C. Caves; Carbondale Glen Lot D-22, LLC ("Carbondale D-22"), Carbondale Glen Lot E-8, LLC ("Carbondale E-8"), Carbondale Glen Lot E-15 ("Carbondale E-15") (collectively, "Claimants"); and Woodbridge Mortgage Investment Fund 1, LLC and 3X A Charm (collectively, "Interested Parties"), as follows:

**NATURE OF THE ACTION**

    1.    This action for declaratory relief is brought by Association pursuant to 28 U.S.C. § 2201 and pursuant to Rule 57 of the Federal Rules of Civil Procedure. Association seeks a

declaration of its rights, duties, and obligations under commercial general liability insurance policies issued to MCS.

## PARTIES

2. Association is an insurance company incorporated in the State of Georgia, and its principal place of business is located in the State of Georgia.

3. Upon information and belief, MCS is incorporated in the State of Colorado, and its principal place of business is located in the State of Colorado.

4. Upon information and belief, Gerald C. Caves is an individual and resident and citizen of the State of Colorado, and the sole member and manager of MCS.

5. Upon information and belief, Carbondale D-22 is a Colorado Corporation, and its principal place of business is located in the State of California.

6. Upon information and belief, Carbondale E-8 is a Colorado Corporation, and its principal place of business is located in the State of California.

7. Upon information and belief, Carbondale E-15 is a Colorado Corporation, and its principal place of business is located in the State of California.

8. Upon information and belief, Woodbridge Mortgage Investment Fund 1, LLC is a Delaware limited liability company with an interest in the real property located at Lot E-8, Aspen Glen, Garfield County, Colorado ("Lot E-8").

9. Upon information and belief, 3X A Charm is a Delaware limited liability company with an interest in the real property located at Lot E-8.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 2201, *et seq.*, because Association seeks a declaration as to its rights, duties, and obligations under the insurance policies issued to MCS.

12. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the events giving rise to this controversy occurred in this District.

### INSURANCE POLICY INFORMATION

13. Association issued to MCS Commercial General Liability Policy No. GLP 0152303 00, effective June 18, 2013 to June 18, 2014 ("Policy 1," attached hereto as **Exhibit 1**), and General Liability Policy No. GLP 0152303 01, effective June 18, 2014 to June 18, 2015 ("Policy 2," attached hereto as **Exhibit 2**) (collectively, the "Policies").

14. Association provided certain insurance coverages to MCS under the Policies subject to the terms, limitations, conditions, and exclusions as more specifically set forth in the Policies.

15. The Policies each contain a limit of $1,000,000 "Each Occurrence," with a $2,000,000 General Aggregate limit, a $2,000,000 Products-Completed Operations Aggregate Limit, and a $1,000,000 Contingent Earth Movement Liability Limit. (Exhibit 1, p.10; Exhibit 2, p.18).

### UNDERLYING ACTIONS

16. On or about November 13, 2013, Carbondale E-8 contracted with MCS for the development of Lot E-8, including the construction of a residence.

17. On or about January 30, 2014, Carbondale D-22 contracted with MCS for the development of Lot D-22, Aspen Glen, Garfield County, Colorado ("Lot D-22"), including the construction of a residence.

18. On or about July 22, 2014, Carbondale E-15 contracted with MCS for the development of Lot E-15, Aspen Glen, Garfield County, Colorado ("Lot E-15"), including the construction of a residence.

19. MCS acted as a General Contractor for the projects on Lot D-22, Lot E-8, and Lot E-15, and was to furnish all of the materials, equipment, labor, and perform all work necessary to completely construct the residences in accordance with the plans.

20. On September 19, 2013, Carbondale D-22 filed the *Complaint* in *Carbondale Glen Lot D-22, LLC v. Mountainview Construction Services, LLC, et al*, 14CV30266, District Court, Garfield County, Colorado (the "D-22 Action," attached hereto as **Exhibit 3**).

21. On September 19, 2013, Carbondale E-15 filed the *Complaint* in *Carbondale Glen Lot E-15, LLC v. Mountainview Construction Services, LLC, et al*, 14CV30267, District Court, Garfield County, Colorado. Subsequently, on September 29, 2015, the Amended Complaint was filed (the "E-15 Action," attached hereto as **Exhibit 4**).

22. The claims asserted in the D-22 Action and the E-15 Action are substantively similar. In both complaints, the claims asserted are Breach of Contract and Breach of Trust Fund Statute/Conversion/Civil Theft. These claims are based on allegations that MCS drew funds related to its work on Lot D-22 and Lot E-15 which were intended to pay subcontractors and materialman for their work, but the subcontractors and materialman were never paid. Further, MCS is alleged to violated the contract by failing to provide the invoices of the subcontractors

and materialman to substantiate the draws.  MCS is alleged to have drawn $262,183.92 in funds related to Lot D-22 and $22,125.00 in funds related to Lot E-15.

23. On September 26, 2013, Carbondale E-8 filed the *Complaint* in *Carbondale Glen Lot E-8, LLC v. Mountainview Construction Services, LLC, et al*, 14CV30276, District Court, Garfield County, Colorado.  On or around February 11, 2015, Association received the *Amended Complaint* in this action, though it has not been filed (the "E-8 Action," attached hereto as **Exhibit 5**).

24. A notice of construction defects pursuant to C.R.S. § 13-20-801, *et seq.*, the Colorado Construction Defect Action Reform Act (the "CDARA Notice") was attached as an exhibit to the Amended Complaint in the E-8 Action.

25. The CDARA Notice lists four construction defects related to the design and construction of Lot E-8, including:

   a. The grading of the lot was changed and the building raised from what was shown in the architectural and landscape plans;

   b. The upper level of the roof plate was raised from what was shown on the approved plans;

   c. The roof framing plan for construction was only a draft plan that clearly identified a "PROBLEM" that was not resolved; and

   d. As a result of the above, the residential home that was the main focus of the overall project was constructed two feet two high in violation of Garfield County zoning and Aspen Glen Subdivision's height restrictions, resulting in a stop work order and requiring the second level of the home, including the roof, to be removed, redesigned, and reconstructed.

26. In the E-8 Action, five claims are asserted against MCS, including Breach of Contract; Breach of Contract – Implied Warranty of Fitness; Negligence/Negligent Construction; Breach of Trust Fund Statute/Conversion/Civil Theft; and Indemnity.

27. These claims are based on allegations that MCS failed to complete work on Lot E-8 in a workman-like manner; deviated from the plans without a change order signed by Carbondale E-8 in violation of the contract; completed work according to structural plans that prominently displayed the word "PROBLEM;" drew at least $275,269.58 in funds related to its work on Lot E-8 which were intended to pay subcontractors and materialman for their work, but the subcontractors and materialman were never paid; and failed to provide the invoices of the subcontractors and materialman to substantiate the draws.

28. In the E-8 Action, Carbondale E-8 alleged that MCS's alleged negligence resulted in the loss of actual use of Lot E-8.

29. MCS tendered a claim for defense and indemnity to Association for the D-22 Action, E-8 Action, and E-15 Action (collectively, "Underlying Actions").

30. Upon receipt of notice of the claim, Association declined to defend and indemnify MCS based on various terms, limitations, conditions, and exclusions set forth in the Policies and more fully discussed below.

31. On August 4, 2015, Association received notice from MCS that it intended to enter into a settlement with all other parties.

32. Upon information and belief, the settlement includes a confessed judgment from MCS to Carbondale D-22, Carbondale E-8, and Carbondale E-15 that the parties believe to be reasonable under the circumstances. Additionally, MCS and Caves agree to assign to Claimants all rights MCS and Caves have against Association for its failure to defend and indemnify MCS and Caves in the E-8 Action.

33. A hearing before Arbitrator Richard Greenleaf is scheduled for August 17, 2015, at which time the reasonableness and propriety of the proposed settlement will be considered.

**INSURANCE COVERAGE ISSUES IN DISPUTE**

34.     Association incorporates Paragraphs 1 though 33 of its Complaint as if fully restated, realleged, and set forth herein.

35.     The Policies provide coverage to MCS for MCS's liability to third parties on an "occurrence" basis, covering "bodily injury" and "property damage" occurring during the policy period.  The Policies provide in pertinent part as follows concerning the defense and indemnification duty to insureds:

> 1.     Insuring Agreement
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Exhibit 1, p. 21; Exhibit 2, p. 29)

36.     The Policy contains the following applicable definitions:

> 13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> 17.     "Property damage" means:
>
>> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>> b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

(Exhibit 1, pp. 34-35; Exhibit 2, pp. 43-44)

37. Many, or all, of the allegations set forth in the D-22 Complaint, the E-8 Complaint, and the E-15 Complaint fail to describe any physical injury to tangible property, nor do they describe any loss of use of tangible property that is not physically injured. Accordingly, the allegations set forth in the D-22 Complaint, the E-8 Complaint, and the E-15 Complaint do not trigger coverage under the Policies.

38. The Policies contain Exclusions j. and m., and the Residential Faulty, Defective or Poor Workmanship Exclusion, which provide a basis for the denial of a defense and indemnification of MCS.

39. The Policies contain Exclusion j. Damage to Property, which provides as follows:

> j.  Damage to Property
>
> "Property damage" to:
>
> ***
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Exhibit 1, pp. 24-45; Exhibit 2, pp. 32-33)

40. The Policies contain Exclusion m. Damage To Impaired Property Or Property Not Physically Injured, which provides as follows:

> m.  Damage To Impaired Property Or Property Not Physically Injured.
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> (2) A delay or failure by you or anyone acting on your behalf

8

          to perform a contract or agreement in accordance with its terms.

(Exhibit 1, p. 25; Exhibit 2, p. 33)

    41.    The Policies contain the following applicable definitions:

    8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

        a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

        b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

    21.    "Your product":

        a.    Means:

            (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

                (a)    You;
                (b)    Others trading under your name; or
                (c)    A person or organization whose business or assets you have acquired;

            (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

        b.    Includes:

            (1) Warranties or representations made at any time with respect to the fitness, quality durability, performance or use of "your work";
            (2) The providing of or failure to provide warnings or instructions.

        c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

      22.    "Your work":

          a.    Means:

              (1) Work or operations performed by you or on your behalf; and
              (2) Materials, parts or equipment furnished in connection with such work or operations.

          b.    Includes:
              (1) Warranties or representations made at any time with respect to the fitness, quality durability, performance or use of "your work";
              (2) The providing of or failure to provide warnings or instructions.

(Exhibit 1, pp. 33, 35-36; Exhibit 2, pp. 41, 44).

      42.    Pursuant to Colorado law and Tenth Circuit precedent as set forth in *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272 (10th Cir. 2011); *Cool Sunshine Heating and Air Conditioning, Inc. v. Am. Family Mut. Ins. Co.*, 2014 U.S. Dist. LEXIS 174818, *1 (D. Colo. Dec. 17, 2014) and *Crossen v. Am. Family Mut. Ins. Co.*, 2010 U.S. Dist. LEXIS 68108, *1 (D. Colo. July 7, 2010), Exclusions j.(5) and (6) and m. exclude coverage for property damage sustained as a result of faulty workmanship.

      43.    All operations performed on Lot D-22, Lot E-8, and Lot E-15 constituted MCS's work because MCS was the General Contractor for each of the lots.

      44.    All of the alleged property damage arose out of MCS's operations on that particular part of Lot D-22, Lot E-8, and Lot E-15 that allegedly sustained property damage. Accordingly, coverage is excluded by Exclusion j.(5) of the Policies.

      45.    To the extent that any particular part of Lot D-22, Lot E-8, and/or Lot E-15 necessitates restoration, repair, or replacement, it is because MCS's work was incorrectly

performed on Lot D-22, Lot E-8, and Lot E-15.  Accordingly, coverage is excluded by Exclusion j.(6) of the Policies.

46. Any alleged impairment of Lot D-22, Lot E-8, and/or Lot E-15 is due to defects, deficiencies, inadequacies, or dangerous conditions resulting from MCS's work or MCS's failure to perform a contract.  Accordingly, coverage is excluded by Exclusion m. of the Policies.

47. The Policies contain endorsement GL RFWE 02 08, the "Residential Faulty, Defective or Poor Workmanship Exclusion," which provides:

> l. Faulty, Defective or Poor Workmanship in Your Work
> This insurance does not apply to any claim or "suit" for the cost of repair, replacement, adjustment, removal, loss of use, inspection, disposal, or otherwise making good any faulty, defective or poor workmanship in "your work" for which any insured or any insured's employees, contractors or subcontractors may be liable.
>
> This exclusion does not include "property damage" sustained by any other property that is caused by the faulty, defective or poor workmanship in "your work".
>
> This exclusion applies only to residential structures for which coverage is not otherwise excluded under this insurance.

(Exhibit 1, p. 73; Exhibit 2, p. 82[1])

48. The Underlying Actions constitute claims or suits for the cost of making good MCS's faulty, defective, or poor workmanship on residential structures for which MCS, its employees, contractors, and subcontractors are liable.

49. There are no allegations of property damage sustained by any property other than that which was within the scope of MCS's work.

---

[1] In Policy 2, the endorsement is titled "Resulting Damage Coverage" and is on form GL RFWE 10 13; the text of the endorsement is virtually identical to that of GL RFWE 02 08.

50. Pursuant to the principles of contract interpretation, set forth in *Chacon v. American Family Mut. Ins. Co.*, 788 P. 2d 748, 750 (Colo. 1990), the Residential Faulty, Defective or Poor Workmanship Exclusion should be given its plain and ordinary meaning.

51. The Residential Faulty, Defective or Poor Workmanship Exclusion is not ambiguous and must be construed so as to give the Exclusion exclude coverage for any defense or indemnification of MCS in the Underlying Actions.

52. All of the alleged property damage identified in the D-22 Complaint, the E-8 Complaint, and the E-15 Complaint was sustained by property constituting MCS's work. Accordingly, coverage is excluded by the Residential Faulty, Defective or Poor Workmanship Exclusion.

53. Because there is no reasonable interpretation of the Policies' terms, limitations, conditions, and exclusions that provides coverage for claims raised against MCS in the Underlying Actions, Association has no duty to provide defense or indemnification.

### First Claim for Relief
### (Declaratory Relief Pursuant to 28 U.S.C. § 2201 *et seq*.)

54. Association incorporates Paragraphs 1 though 53 of its Complaint as if fully restated, realleged, and set forth herein.

55. An actual and justiciable controversy presently exists between Association and MCS concerning the coverage available under the Policies with respect to Claimants' and the Interested Parties' alleged losses and damages as set forth in the Underlying Actions.

56. Association respectfully requests this Court to make a declaration concerning its rights, duties, and obligations to MCS under the Policies' terms, conditions, limitations, and exclusions.

WHEREFORE, Association respectfully requests this Court for judgment on this Complaint as follows:

    a. That this Court determine and declare Association's rights, duties, and obligations to MCS under the Policies;

    b. For pre- and post-judgment interest, costs of suit, and attorneys' fees to the fullest extent allowed by law; and

    c. For such other relief as this Court deems just and equitable.

DATED: September 15, 2015

Respectfully submitted,

*/s/ Cathleen Heintz*_____
Cathleen H. Heintz
Elayna M. Fiene
Wilson Elser Moskowitz Edelman & Dicker, LLP
1225 17th Street, Ste 2420
Denver, CO 80202
Telephone: (303) 572-5300
Facsimile: (303) 572-5301
Email: Cathleen.Heintz@wilsonelser.com;
Elayna.Fiene@wilsonelser.com